**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSSETTS**

| | |
|---|---|
| DINESH MULANI and WESLEY BATSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PETER PAN BUS LINES, INC.,<br><br>Defendant. | Case No.<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiffs Dinesh Mulani and Wesley Batson ("Plaintiffs"), on behalf of the putative Class, by their undersigned counsel, and for their Class Action Complaint against Defendant Peter Pan Bus Lines, Inc., allege as follows:

## PRELIMINARY STATEMENT

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Peter Pan Bus Lines, Inc. ("Defendant" or "Peter Pan") arising from its deceptive and unfairly disclosed junk fees ("Extra Fees"). These Extra Fees include, but are not limited to, Peter Pan's purported "Reservation Fee", "Terminal Fee", "Fuel Surcharge", "Departure Fee" and "Transaction Fees" assessed on bus tickets.

2. Peter Pan Bus Lines is one of the largest privately-owned motorcoach companies in the USA. Peter Pan offers daily express service in major east coast metro areas such as Baltimore, Boston, Hartford, Massachusetts, Philadelphia and Washington, DC.

3. When consumers purchase a bus ticket on Peter Pan's website, Peter Pan advertises a single low price for a that bus ticket. However, that marketing representation is false because Peter Pan surreptitiously adds a host of Extra Fees to all bus ticket purchases.

4. As discussed in detail herein, the assessment of these fees is deceptive and unfair, since, a) Peter Pan does not disclose these added fees until the very last step in the multi-step purchasing process; b) the fees themselves are deceptively named and described; and c) the fees are an actuality simply the price of riding on a Peter Pan bus.

5. By this conduct, Peter Pan has engineered a "pay junk fees to play" scheme. Consumers cannot ride on a Peter Pan bus unless they pay the junk fees unilaterally set by Defendant with zero relationship to the services actually being provided.

6. Throughout the entirety of the bus ticket purchasing process, Peter Pan displays a single price for the ticket, *without any additional Extra Fees*. Reasonable consumers like Plaintiffs proceed through check out without ever becoming aware of any additional fees assessed by Defendant.

7. Peter Pan misrepresents the nature of the Extra Fees assessed on the Peter Pan's website, by making representations that fail to correct reasonable understandings of its advertised low price bus tickets.

8. Peter Pan omits and conceals material facts about the Extra Fees, never once informing consumers in any disclosure, at any time, of the true nature of these fees.

9. Hundreds of thousands of Peter Pan customers like Plaintiffs have been assessed hidden Extra Fees they did not bargain for.

10. Defendant does everything it can to hide the Extra Fees on its checkout pages. Many times, this works: consumers do not even notice that the total amount they are being charged for the order has increased at this late stage.

11. Moreover, even consumers who notice the Extra Fees often still go through with the purchase. Having put in all their information and arranged other travel plans, consumers do not want to start over and research whether there may be another transportation option.

12. It is false and deceptive for Defendant to surreptitiously add Extra Fees at the end of the purchasing process, especially where it offers no explanation of these Extra Fees at any time during the checkout process. The Extra Fees are only added without comment or description as line items just before a purchase is completed after a multi-step process without any mention of the fee.

13. Worse, the Extra Fees themselves are a sham, a classic "junk fee" that is for no actual service. Of course, one who rides a motorcoach needs a reservation, a terminal for arrival and departure, and there must be fuel to power the motorcoach. These are simply a part of the process of riding a bus. These Extra Fees are merely a second payment—in the form of a junk fee—for the service that Peter Pan already purports to be providing. The Extra Fees are not for "reservations", "fuel", "departure", "transactions", or "terminals" at all: the fee is for profit for the Defendant.

14. By hiding the mis-named and deceptive fee at the very last step of the sale, Defendant raked in millions of dollars in Extra Fees at the expense of consumers stuck with no other choice.

15. As a result of Defendant's unfair and deceptive conduct, Plaintiffs and the proposed class have suffered damages. They purchased bus tickets they otherwise may not have bought and paid fees they otherwise would not have paid, had they not been drawn in by Defendant's deceptive bait-and-switch scheme.

16. Defendant should not be allowed to profit from this deception. Plaintiffs seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay the Extra Fees.

**PARTIES**

17. Plaintiff Dinesh Mulani is a resident and a citizen of Rego Park, New York.

18. Plaintiff Wesley Batson is a resident and citizen of East Elmhurst, New York.

19. Defendant Peter Pan Bus Lines is one of the largest privately-owned motorcoach companies in the USA. Peter Pan offers daily express service in major metro areas such as Baltimore, Boston, Hartford, Massachusetts, Philadelphia and Washington, DC. It is headquartered in Springfield, Massachusetts.

**JURISDICTION AND VENUE**

20. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because

a. the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B)

b. at least one member of the proposed class is a citizen of a State other than Massachusetts, § 1332(d)(2)(A); and

c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Peter Pan is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Peter Pan Prominently and Plainly Promises A Flat Rate For Its Bus Tickets.

22. Peter Pan prominently features a flat, low-cost rate for its bus tickets.

23. Upon entering its website, peterpanbus.com, consumers are immediately greeted with the option to book a bus ticket.




24. After a consumer selects their departure destination, arrival destination, departure date, and number of passengers, and press "Search", she is presented with a single price for the bus ticket, and given the option to "Book Now":




25. Only on the final step, after deceiving users into believing that they will pay a low flat price for their bus tickets does Peter Pan add the Extra Fees to the order. For example, the below screenshot displays a purported "Reservation Fee" and "Terminal Fee":



26. On information and belief, at the final step in the checkout process, depending on the ticket purchased, Peter Pan also adds “Fuel Surcharges”, “Transaction Fees”, and/or “Departure Fees”:




27. This is a classic case of “Drip pricing”. “Drip pricing” works because as research has shown, “our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that ‘investing more time into searching for it will not be worthwhile.’” Santul Narkar, *It’s a Great Deal, Before the ‘Drip Pricing*, Massachusetts Times, available at https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (quoting Professor David Friedman of Willamette University).

28. Reasonable consumers like Plaintiffs understand that a bus ticket will necessarily *include* the cost of making the reservation and the cost of departing and arriving at the bus terminals.

29. In short there is no “reservation”, “departure”, “fuel”, “transaction” or “terminal” separate from the process of purchasing a bus ticket and riding a bus.

30. By assessing add-on fees for reservations, transactions, terminals, departures, and fuel, Peter Pan renders its flat, low-cost price promises false.

31. By unfairly obscuring its charges to consumers, Peter Pan operates more like Peter Pan's nemesis Captain Hook, and deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true charges. Indeed, no other major bus website charge these add on fees—for the simple reason that reservations and terminal use are inextricable aspects of taking a bus.

32. Worse, Peter Pan expressly misrepresents the nature of its Extra Fees. Buried deep in Peter Pan's website, and not visible throughout the ticket purchasing process, Peter Pan states "*Various fees will be added to all ticket prices at checkout*" and that a "facility fee" will apply:

## Purchasing Tickets

Tickets are available for purchase at peterpanbus.com, on the Peter Pan Bus Mobil App, and at Peter Pan terminals and agencies.

**Various fees will be added to all ticket prices at checkout**

Please review your order carefully… all tickets are date and time specific and non-refundable.

<u>Please have the following available when purchasing your ticket(s)</u>:

- First and last name(s) of each customer traveling (for security purposes)
- Itinerary of travel (route and date(s) and time(s) of travel)
- Valid photo ID confirming identity is required during time of purchase or when boarding the bus
- Valid form of payment (cash, major credit/debit card). A valid photo ID is required when purchasing a ticket with a credit card.

A facility fee (in addition to the confirmed ticket price) will apply per ticket portion, per customer.

33. These descriptions are false and deceptive for two reasons: First, Peter Pan completely fails to explain what various fees may apply, and what a facility fee is. Second, Peter Pan falsely represents that these fees are merely "pass through" fees imposed by the facility instead

of by Peter Pan itself. But of course, reservations, terminals, departures, fuel, and transactions are all an inextricable part of purchasing a bus ticket and of course, subsequently riding that bus.

**C. The Extra Fees Are Junk Fees That Violates Federal Guidance.**

34. Peter Pan's Extra Fees are precisely the type of "Junk Fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

35. As the Federal Trade Commission said recently in its effort to combat Junk Fees,

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, , October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

36. In its own effort to combat junk fees, the State of New York recently passed N.Y. Arts & Cult. Aff. Law § 25.07 concerning fees associated with tickets to sports and concerts. Under that law, "[t]he price of the ticket shall not increase during the purchase process, excluding

reasonable fees for the delivery of non-electronic tickets based on the delivery method selected by the purchaser, which shall be disclosed prior to accepting payment therefor." N.Y. Arts & Cult. Aff. Law § 25.07(4). Accordingly, if the consumer selects to purchase a ticket electronically, at the start of the transaction, the total ticket price shall not increase during the period it takes the consumer to purchase the ticket (e.g., finish the online transaction). The "All-In Price" must be disclosed to the consumer before the consumer selects the ticket for purchase. Similarly here, the "All-In Price" should have been displayed to the consumer throughout the enrollment process.

37. Just this month, California expanded its Consumer Legal Remedies Act ("CLRA") was amended to make illegal "drip pricing," which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." See California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

38. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

39. Defendant violates federal guidance by adding the Extra Fees as line items well after the consumer "add[s] to shopping cart", and by failing to disclose the nature of these fees and whether consumers are getting any benefit at all from the fee charged. Worse yet, there is no actual separate service for "terminals", "transactions", "departure", "fuel" or "reservations" where each of these are necessarily required as part of the process of purchasing a ticket to ride a Peter Pan bus.

40. The Extra Fees provide no additional value to consumers.

41. Defendant imposes undisclosed, deceptive, and unfair junk fees on consumers who have no choice but to pay them. By this conduct, Peter Pan has engineered a "pay junk fees to play" scheme. Consumers cannot ride Peter Pan's busses unless they pay the junk fee unilaterally set by Defendant with zero relationship to the service actually being provided.

**E. Plaintiff Mulani's Experience**

42. Plaintiff Mulani used peterpanbus.com to purchase a bus ticket on May 21, 2024.

43. When using the website, Plaintiff Mulani was informed that his bus ticket would cost $35.00.

44. However, Plaintiff Mulani's purchase included $7.00 in "Transaction Fees" that for the reasons above – in fact represented an additional charge to the cost of riding on the bus.

45. Plaintiff Mulani did not notice that Defendant had increased the price of the transaction at the last minute.

46. Had Defendant disclosed the Extra Fees at an earlier time in the checkout process, and disclosed the nature of the Extra Fees, Plaintiff Mulani may have made a different choice with respect to whether to use Peter Pan's bus services.

**E. Plaintiff Batson's Experience**

47. Plaintiff Batson used peterpanbus.com to purchase two bus tickets from New York, New York to Philadelphia, Pennsylvania on February 9, 2024.

48. When using the website, Plaintiff Batson was informed that his bus tickets would cost $11.00 each, for a total of $22.00.

49. However, Plaintiff Batson's purchase included $14.00 in "Transaction Fees", which is more than the cost of each $11.00 ticket, that for the reasons above – in fact represented an additional charge to the cost of riding on the bus.

50. Plaintiff Batson did not notice that Defendant had increased the price of the transaction at the last minute.

51. Had Defendant disclosed the Extra Fees at an earlier time in the checkout process, and disclosed the nature of the Extra Fees, Plaintiff Batson may have made a different choice with respect to whether to use Peter Pan's bus services.

## CLASS ALLEGATIONS

52. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

> All persons who, during the applicable statute of limitations, were charged Extra Fees by Defendant.

53. The Nationwide Classes and alternative state subclass defined above are collectively referred to herein as the "Classes." Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

54. Excluded from the Classes are Defendant, its consumers, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55. The members of the Classes are so numerous that joinder is impractical. The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

56. The claims of the representative Plaintiffs are typical of the claims of the Classes he seeks to represent in that the representative Plaintiffs, like all members of the Classes, were charged improper and deceptive fees as alleged herein. The representative Plaintiffs, like all members of the Classes, were damaged by Defendant's misconduct in that they were charged hidden Extra Fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct

resulting in injury to all members of the Classes. And Defendant has no unique defenses that would apply to Plaintiffs and not the Classes.

57. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

58. The questions of law and fact common to the Classes include, but are not limited to, the following:

a. Whether Defendant's assessment of Extra Fees was unfair, deceptive, or misleading;

b. Whether Defendant's assessment of Extra Fees breached the contract;

c. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

d. Whether Plaintiffs and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

59. Plaintiffs' claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful Extra Fee policies and practices. Plaintiffs have suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

60. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

61. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy. Since the amount of each individual member of the Classes' claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Defendant's misconduct will proceed without remedy.

62. Even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

63. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

64. Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Classes as a whole.

65. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of the Class)

66. The preceding allegations are incorporated by reference.

67. To the detriment of Plaintiffs and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

68. Plaintiffs and the Class conferred a benefit on Defendant when they paid Defendant the Extra Fees, which they did not agree to and could not reasonably avoid.

69. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

70. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

71. Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### SECOND CLAIM FOR RELIEF
### Breach of Contract
### (On Behalf of Plaintiffs and the Class)

72. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

73. Plaintiffs and Peter Pan have contracted for the use of Peter Pan bus rides, as embodied in Peter Pan's Terms of Use.

74. No contract provision authorizes Peter Pan to be able to impose hidden Extra Fees on its customers.

75. Peter Pan breached the terms of its contract with consumers by charging additional Extra Fees.

76. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

77. Plaintiffs and members of the Class have sustained damages as a result of Peter Pan's breach of the contract and breach of the implied covenant of good faith and fair dealing.

**THIRD CLAIM FOR RELIEF**
**Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs and the New York Subclass)**

78. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

79. This cause of action is asserted on behalf of the New York Subclass, whose members enjoy the protections of Arti N.Y. GEN. BUS. LAW § 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a).

80. Defendant's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who maintain checking accounts with Defendant.

81. The policies and practices were and are misleading in a material respect, because Defendant hid its Extra Fees until the very end of the registration process, often causing consumers to miss its assessment entirely. Moreover, consumers are not paying for any additional service with the Extra Fees.

82. Had Plaintiffs and the members of the New York Subclass known they could be charged Extra Fees, they may have made different purchasing decisions.

83. Plaintiffs and members of the New York Subclass were injured as a result of Defendant's policies and practices, in that they paid the unfairly assessed Transaction Fees.

84. Defendant's actions were willful and knowing.

85. As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiffs and the other members of the New York Subclass each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

**FOURTH CLAIM FOR RELIEF**
**False Advertising – N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff and the New York Subclass)**

86. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

87. N.Y. Gen. Bus. Law § 350 provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

88. Defendant's actions regarding the Extra Fees, as described herein, constitute false advertising in the conduct of the business trade or commerce of bus tickets.

89. Plaintiffs and the New York subclass have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 350.

90. Defendant's false advertising occurred, and continues to occur, in the course of Defendant's business.

91. As an actual and proximate result of Defendant's misconduct, Plaintiffs and the Class were injured and suffered damages.

92. As redress for Defendant's repeated and ongoing violations of this consumer

protection statute, Plaintiffs and the other members of the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class seek an Order:

1. Certifying the proposed Class pursuant to Rule 23;

2. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3. Declaring the Defendant has committed the violations of law alleged herein;

4. Providing for any and all injunctive relief the Court deems appropriate;

5. Awarding statutory damages in the maximum amount for which the law provides;

6. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7. Providing for any and all equitable monetary relief the Court deems appropriate;

8. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9. Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

10. Awarding pre- and post-judgment interest to the extent the law allows; and

11. Providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: September 3, 2024

Respectfully submitted,

*/s/ Jonathan M. Hixon*
Jonathan M. Hixon, BBO # 692420
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
Tel: (617) 422-0200
jmh@bostonbusinesslaw.com

Jeffrey D. Kaliel
Sophia Goren Gold
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielgold.com*

*Counsel for Plaintiffs and the Proposed Classes*