**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSSETTS**

| | |
|---|---|
| DINESH MULANI and WESLEY BATSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PETER PAN BUS LINES, INC.,<br><br>Defendant. | Case No.: 3:24-cv-12277<br><br>**Jury Trial Demanded** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Dinesh Mulani and Wesley Batson ("Plaintiffs") bring this class action on behalf of themselves and all other similarly situated, and for their Complaint against Peter Pan Bus Lines, Inc. ("Peter Pan" or "Defendant") state and allege as follows:

## PRELIMINARY STATEMENT

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Peter Pan Bus Lines, Inc. ("Defendant" or "Peter Pan") arising from its deceptive and unfairly disclosed junk fees ("Extra Fees"). These Extra Fees include, but are not limited to, Peter Pan's purported "Reservation Fee", "Terminal Fee", "Fuel Surcharge", "Departure Fee" and "Transaction Fees" assessed on bus tickets.

2. Peter Pan Bus Lines is one of the largest privately-owned motorcoach companies in the USA. Peter Pan offers daily express service in major east coast metro areas such as Baltimore, Boston, Hartford, Massachusetts, Philadelphia and Washington, DC.

3. When consumers purchase a bus ticket on Peter Pan's website, Peter Pan advertises a single, low price for that bus ticket. However, that marketing representation is false because Peter Pan surreptitiously adds a host of erroneous Extra Fees to all bus ticket purchases.

4. As discussed in detail herein, the assessment of these fees is deceptive and unfair because: a) Peter Pan does not disclose these added fees until the very last step in the multi-step purchasing process; b) the fees themselves are deceptively named and described; and c) the fees are, in actuality, simply the price of riding on a Peter Pan bus.

5. By this conduct, Peter Pan has engineered a "pay junk fees to play" scheme. Consumers cannot ride on a Peter Pan bus unless they pay the junk fees unilaterally set by Defendant, despite the fact that they have zero relationship to any extraneous services actually being provided.

6. Throughout the entirety of the bus ticket purchasing process, Peter Pan displays a single price for the ticket, *without the inclusion of any additional Extra Fees*. Reasonable consumers like Plaintiffs proceed through check out without ever becoming aware of any additional fees assessed by Defendant.

7. Peter Pan misrepresents the nature of the Extra Fees assessed on the Peter Pan's website, by making representations that fail to correct reasonable understandings of its advertised low price bus tickets.

8. Peter Pan omits and conceals material facts about the Extra Fees, never once informing consumers in any disclosure, at any time, of the true nature of these fees.

9. Hundreds of thousands of Peter Pan customers like Plaintiffs have been assessed hidden Extra Fees they did not bargain for.

10. Defendant does everything it can to hide the Extra Fees on its checkout pages. Frequently, this works: consumers do not even notice that the total amount they are being charged for the order has increased at this late stage of their purchase.

11. Moreover, even consumers who notice the Extra Fees often still go through with the purchase. Having put in all their information and arranged their travel plans, consumers are materially disincentivized from starting over and researching whether there may be another transportation option.

12. It is false and deceptive for Defendant to surreptitiously add Extra Fees at the end of the purchasing process, especially where it offers no explanation of these Extra Fees at any time during the checkout process. The Extra Fees are added without comment or description as inconspicuous line items, just before a purchase is completed, after a multi-step process without any mention of these charges.

13. Worse, the Extra Fees themselves are a sham, a classic "junk fee" that does not correspond to any actual extraneous service. Of course, by the very nature of bus transportation, one who rides a motorcoach needs a reservation, a terminal for arrival and departure, and there must be fuel to power the vehicle. These are aspects inherent to the process of riding a bus. The Extra Fees charged by Defendant are merely a second payment—in the form of a junk fee—for the service that Peter Pan already purports to be providing. The Extra Fees are not for "reservations", "fuel", "departure", "transactions", or "terminals" at all: the fee is simply profit for the Defendant.

14. By hiding the mis-named and deceptive fees until the very last step of the sale, Defendant has raked in millions of dollars at the expense of consumers stuck with no other choice.

15. As a result of Defendant's unfair and deceptive conduct, Plaintiffs and the proposed class have suffered damages. They purchased bus tickets they otherwise may not have bought and paid fees they otherwise would not have paid, had they not been drawn in by Defendant's deceptive bait-and-switch scheme.

16. Defendant should not be allowed to profit from this deception. Plaintiffs seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay the Extra Fees.

## PARTIES

17. Plaintiff Dinesh Mulani is a resident and a citizen of Rego Park, New York.

18. Plaintiff Wesley Batson is a resident and citizen of East Elmhurst, New York.

19. Defendant Peter Pan Bus Lines is one of the largest privately-owned motorcoach companies in the USA. Peter Pan offers daily express service in major metro areas such as Baltimore, Boston, Hartford, Massachusetts, Philadelphia and Washington, DC. It is headquartered in Springfield, Massachusetts.

## JURISDICTION AND VENUE

20. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because

a. the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B)

b. at least one member of the proposed class is a citizen of a State other than Massachusetts, § 1332(d)(2)(A); and

c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Peter Pan is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Peter Pan Prominently and Plainly Promises a Flat Rate For Its Bus Tickets.

22. Peter Pan prominently features a flat, low-cost rate for its bus tickets.

23. Upon entering its website, peterpanbus.com, consumers are immediately greeted with the option to book a bus ticket.




24. As seen below, after a consumer selects their departure destination, arrival destination, departure date, and number of passengers, and press “Search”, they are presented with a single price for the bus ticket, and given the option to “Book Now”:




25. Nowhere in the presented offer does Defendant indicate that this price does not reflect the total price that will be paid, or that it is the price presented before the addition of its erroneous Extra Fees.

26. Only on the final step, after deceiving users into believing that they will pay a low flat price for their bus tickets does Peter Pan add the Extra Fees to the order. For example, the below screenshot displays a purported "Reservation Fee" and "Terminal Fee":




27. On information and belief, at the final step in the checkout process, depending on the ticket purchased, Peter Pan also adds "Fuel Surcharges", "Transaction Fees", and/or "Departure Fees":




28. Defendant's deceptive checkout tactics are a classic case of "Drip pricing". "Drip pricing refers to a strategy where additional fees are revealed incrementally during the purchase process. It starts with a low base price but adds mandatory charges such as service fees, taxes and

handling costs as customers progress through checkout. Critics note that this practice can mislead consumers about the true cost."[1]

29. "Drip pricing" works because as research has shown, "our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that 'investing more time into searching for it will not be worthwhile.'"[2]

30. Reasonable consumers like Plaintiffs understand that a bus ticket will necessarily *include* the cost of making the reservation, the cost of departing and arriving at the bus terminals, and the cost of the fuel inherently necessary for bus travel.

31. In short there is no "reservation", "departure", "fuel", "transaction" or "terminal" separate from the process of purchasing a bus ticket and riding a bus.

32. By assessing add-on fees for reservations, transactions, terminals, departures, and fuel, Peter Pan renders its flat, low-cost price promises false.

33. By unfairly obscuring its charges to consumers, Peter Pan operates more like Peter Pan's nemesis Captain Hook and deceives consumers, gaining an unfair upper hand on competitors that fairly disclose their true charges. Indeed, upon information and belief, no other major bus website charge these add on fees—for the simple reason that reservations and terminal use are inextricable aspects of bus transportation.

---

[1] PYMTS, *Regulators Have Been Sounding the Drip Pricing Alarm for Years*, (July 31, 2024), available at https://www.pymnts.com/news/regulation/2024/regulators-have-been-sounding-the-drip-pricing-alarm-for-years/

[2] Santul Narkar, *It's a Great Deal, Before the 'Drip Pricing*, Massachusetts Times, available at https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (quoting Professor David Friedman of Willamette University)

34. Worse, Peter Pan expressly misrepresents the nature of its Extra Fees. Buried deep in Peter Pan's website, and not visible throughout the ticket purchasing process, Peter Pan states "*Various fees will be added to all ticket prices at checkout*" and that a "facility fee" will apply:

## Purchasing Tickets

Tickets are available for purchase at peterpanbus.com, on the Peter Pan Bus Mobil App, and at Peter Pan terminals and agencies.

**Various fees will be added to all ticket prices at checkout**

Please review your order carefully… all tickets are date and time specific and non-refundable.

Please have the following available when purchasing your ticket(s):

- First and last name(s) of each customer traveling (for security purposes)
- Itinerary of travel (route and date(s) and time(s) of travel)
- Valid photo ID confirming identity is required during time of purchase or when boarding the bus
- Valid form of payment (cash, major credit/debit card). A valid photo ID is required when purchasing a ticket with a credit card.

A facility fee (in addition to the confirmed ticket price) will apply per ticket portion, per customer.

35. Additionally, as of February of 2024, when Plaintiff Batson made his purchase, no such language referencing "Various fees" was contained in the same page of Defendant's website.

36. Defendant's descriptions are false and deceptive for two reasons: First, Peter Pan completely fails to explain what various fees may apply, nor what a facility fee is. Second, Peter Pan falsely represents that these fees are merely "pass through" fees imposed by the facility instead of by Peter Pan itself. But of course, reservations, terminals, departures, fuel, and transactions are all an inextricable part of purchasing a bus ticket and of course, subsequently riding that bus.

**C. The Extra Fees Are Junk Fees That Violates Federal Guidance.**

37. Peter Pan's Extra Fees are precisely the type of "Junk Fee" that has come under government scrutiny in recent years:

> "Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the

> register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system."[3]

38. As the Federal Trade Commission said recently in its effort to combat Junk Fees,

> "[M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged."[4]

39. In its own effort to combat junk fees, the State of New York recently passed N.Y. Arts & Cult. Aff. Law § 25.07 concerning fees associated with tickets to sports and concerts. Under that law, "[t]he price of the ticket shall not increase during the purchase process, excluding reasonable fees for the delivery of non-electronic tickets based on the delivery method selected by the purchaser, which shall be disclosed prior to accepting payment therefor." N.Y. Arts & Cult. Aff. Law § 25.07(4). Accordingly, if the consumer selects to purchase a ticket electronically, at the start of the transaction, the total ticket price shall not increase during the period it takes the consumer to purchase the ticket (e.g., finish the online transaction). The "All-In Price" must be disclosed to the consumer before the consumer selects the ticket for purchase. Similarly here, the "All-In Price" should have been displayed to the consumer throughout the enrollment process.

40. Similarly, California recently expanded its Consumer Legal Remedies Act ("CLRA") with an amendment to make "drip pricing" illegal, in cases involving advertising a price

---

[3] The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, (Mar. 5, 2024), available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

[4] Federal Trade Commission, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, (Oct. 11, 2023), available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

that is less than the actual price that a consumer will have to pay for a good or service. Cal. Civ. Code § 1770(a)(29). Under the updated California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later like Defendant's bus tickets. In other words, "***the price listed or advertised to the consumer must be the full price that the consumer is required to pay***."[5] (emphasis added).

41. As the California Department of Justice stated:

> "Businesses are free to explain how they set their prices or to subsequently itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive."

*Id*. at p. 4.

42. Federal guidance has also criticized the the type of "drip pricing" tactics utilized by Defendant. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising", the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided ***before*** the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart."[6]

43. Defendant violates federal guidance by adding the Extra Fees as line items well after the consumer "add[s] to shopping cart", and by failing to disclose the nature of these fees and

---

[5] *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024).

[6] *See* Fed. Trade Comm'n, *.com Disclosures: How to Make Effective Disclosures iN Digital Advertising* at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

whether consumers are getting any benefit at all from the fees charged. Defendant fails to identify these benefits because there is no actual separate service for "terminals", "transactions", "departure", "fuel" or "reservations," as each of these are a necessarily required part of the process of purchasing a ticket to ride a Peter Pan bus.

44. These surreptitious and unfounded Extra Fees provide no additional value to consumers.

45. Defendant's practice of imposing its hidden and superfluous Extra Fees on unsuspecting consumers is deceptive, unfair, and contrary to law.

**E. Plaintiff Mulani's Experience**

46. Plaintiff Mulani used peterpanbus.com to purchase a bus ticket on May 21, 2024.

47. When using the website, Defendant represented to Plaintiff Mulani that his bus ticket would cost $35.00.

48. However, at the last minute of checkout, Plaintiff Mulani's purchase included $7.00 in "Transaction Fees" that, for the reasons stated above, in fact represented an additional charge for services inherent to the cost of riding on the bus.

49. Plaintiff Mulani did not notice that Defendant had increased the price of the transaction at the last minute.

50. Had Defendant disclosed the Extra Fees at an earlier time in the checkout process, and disclosed the nature of the Extra Fees, Plaintiff Mulani would have made a different choice with respect to whether to use Peter Pan's bus services.

### E. Plaintiff Batson's Experience

51. Plaintiff Batson used peterpanbus.com to purchase two bus tickets from New York, New York to Philadelphia, Pennsylvania on February 9, 2024.

52. When using the website, Defendant represented to Plaintiff Batson that his bus tickets would cost $11.00 each, for a total of $22.00.

53. However, at the last minute of checkout, Plaintiff Batson's purchase included $14.00 in "Transaction Fees" (more than the cost of each $11.00 ticket) that, for the reasons stated above, in fact represented an additional charge for services inherent to the cost of riding on the bus.

54. Plaintiff Batson did not notice that Defendant had increased the price of the transaction at the last minute.

55. Had Defendant disclosed the Extra Fees at an earlier time in the checkout process, and disclosed the nature of the Extra Fees, Plaintiff Batson would have made a different choice with respect to whether to use Peter Pan's bus services.

## CLASS ALLEGATIONS

56. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements. Plaintiffs bring this action on behalf of the following Nationwide Class and New York Subclass:

> **NATIONWIDE CLASS:** All persons who, during the applicable statute of limitations, were charged Extra Fees by Defendant.
>
> **NEW YORK SUBCLASS:** All persons residing in the State of New York who, during the applicable statute of limitations, were charged Extra Fees by Defendant.

57. The Nationwide Class and New York Subclass defined above are collectively referred to herein as the "Classes." Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

58. Excluded from the Classes are Defendant, its subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

59. The members of the Classes are so numerous that joinder is impractical. The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

60. The claims of the representative Plaintiffs are typical of the claims of the Classes they seek to represent in that the representative Plaintiffs, like all members of the Classes, were charged improper and deceptive fees as alleged herein. The representative Plaintiffs, like all members of the Classes, were damaged by Defendant's misconduct in that they were charged hidden and erroneous Extra Fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. And Defendant has no unique defenses that would apply to Plaintiffs and not the Classes.

61. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes. The questions of law and fact common to the Classes include, but are not limited to, the following:

a. Whether Defendant's assessment of Extra Fees was unfair, deceptive, or misleading;

b. Whether Defendant's assessment of Extra Fees breached its contracts with Plaintiffs and the Class members;

c. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

d. Whether Plaintiffs and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

62. Plaintiffs have suffered the same harm alleged as the other members of the Classes and have no interests antagonistic to the interests of any other member of the Classes. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

63. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Classes' claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Defendant's misconduct will proceed without remedy.

64. Even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard

which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

65. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

66. Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Classes as a whole.

67. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of Plaintiffs and the Nationwide Class)

68. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

69. To the detriment of Plaintiffs and the Nationwide Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

70. Plaintiffs and the Nationwide Class conferred a benefit on Defendant when they paid Defendant the Extra Fees it charged, which they did not agree to and could not reasonably avoid, and for which Defendant provided no additional service.

71. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

72. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

73. Plaintiffs and the Nationwide Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## SECOND CLAIM FOR RELIEF
## Breach of Contract
## (On Behalf of Plaintiffs and the Nationwide Class)

74. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

75. Plaintiffs and Peter Pan have contracted for the use of Peter Pan bus rides, as embodied in Peter Pan's Terms of Use.

76. No contract provision authorizes Peter Pan to impose hidden Extra Fees on its customers.

77. Peter Pan breached the terms of its contract with consumers by charging additional, undisclosed and superfluous Extra Fees.

78. Plaintiffs and members of the Nationwide Class have performed all, or substantially all, of the obligations imposed on them under the contract.

79. Plaintiffs and members of the Nationwide Class have sustained damages as a result of Peter Pan's breach of the contract.

## THIRD CLAIM FOR RELIEF
## Breach of Implied Covenant of Good Faith & Fair Dealing
## (On Behalf of Plaintiffs and the Nationwide Class)

80. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

81. Massachusetts law implies into every contract a covenant of good faith and fair dealing. The implied covenant provides that neither party shall do anything which would have the effect of destroying or injuring the right of the other party to receive the benefit of the bargain. *See Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 82, 12 N.E.3d 354 (2014). A breach of the implied covenant occurs when one party violates the reasonable expectations of the other.

82. Defendant breached the implied covenant of good faith and faith dealing by acting in bad faith and with ill-motive to knowingly deceive consumers about 1) the price they would pay for their bus tickets and 2) the nature of their erroneous Extra Fees.

83. Defendant engaged in such bad faith conduct including, but not limited to, the following:

a. Utilizing "drip pricing" tactics to hide additional charges until the end of consumers' transactions;

b. Misrepresenting the initial price advertised for the purchase of ticket fares;

c. Failing to identify that the initial price advertised would be subject to additional charges of Extra Fees;

d. Misrepresenting the purpose and/or nature of assessed Extra Fees, despite the purported services being inherent to bus transportation; and

e. Misrepresenting Extra Fees as "pass through" fees despite being retained by Defendant.

84. By taking said actions, Defendant breached its requirement to refrain from using unfair leverage to secure undue economic advantage and its duty to refrain from withholding material information and making misleading representations to consumers.

85. As a result of Peter Pan's breach of the implied covenant of good faith and fair dealing, Plaintiffs and members of the Nationwide Class have sustained damages.

**FOURTH CLAIM FOR RELIEF**
**Deceptive Acts or Practices – Mass. Gen. Laws Ch. 93A, *et seq*.**
**(On Behalf of Plaintiffs and the Nationwide Class)**

86. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

87. Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("MUDBPA")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." An act is "deceptive" under Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

88. Section 9 provides: "Any person ... who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two ... may bring an action in the superior court ... for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper ... Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons."

89. Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person," and Defendant is engaged in "trade" and "commerce" in Massachusetts by offering for sale

products and/or services that directly or indirectly affect the people of Massachusetts. Additionally, Defendant's principal place of business is in Massachusetts.

90. By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged and continues to engage in unfair or deceptive acts or practices in the conduct of trade or commerce.

91. Defendant's misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

92. Defendant's acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

93. Defendant's conduct is also misleading in a material way by intentionally hiding and misrepresenting the nature of the Extra Fees it charged Plaintiff and the Nationwide Class members.

94. Had Plaintiffs and the members of the Nationwide Class known they would be charged Extra Fees, or the erroneous nature of these fees, they would have made different purchasing decisions.

95. Mass. Gen. Laws Ch. 93A, et seq. represents a fundamental public policy of the Commonwealth of Massachusetts.

96. For each loss, Plaintiff and each member of the Nationwide Class may recover an award of actual damages or twenty-five dollars, whichever is greater. Ch. 93A § 9(3).

97. Because Defendant acted willfully or knowingly, Plaintiff and each member of the Nationwide Class may recover up to three but not less than two times this amount. In addition, Plaintiff may recover attorneys' fees and costs.

98. Plaintiff and the members of the Nationwide Class may also pray for the imposition of injunctive relief which limits and polices Defendant's representations within or reaching Massachusetts. The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, members of the Nationwide Class, and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiff, members of the Nationwide Class, and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

99. In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), Plaintiff's counsel served Defendant with written notice of their violation of Ch. 93A and a demand for relief on September 6, 2024.

**FIFTH CLAIM FOR RELIEF**
**Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349**
**(On Behalf of Plaintiffs and the New York Subclass)**

100. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

101. This cause of action is asserted on behalf of the New York Subclass, whose members enjoy the protections of Arti N.Y. GEN. BUS. LAW § 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a).

102. Defendant's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who maintain checking accounts with Defendant.

103. The policies and practices were and are misleading in a material respect, because Defendant hid its Extra Fees until the very end of the registration process, often causing consumers to miss its assessment entirely. Moreover, consumers are not paying for any additional service with the Extra Fees.

104. Had Plaintiffs and the members of the New York Subclass known they could be charged Extra Fees, they may have made different purchasing decisions.

105. Plaintiffs and members of the New York Subclass were injured as a result of Defendant's policies and practices, in that they paid the unfairly assessed Transaction Fees.

106. Defendant's actions were willful and knowing.

107. As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiffs and the other members of the New York Subclass each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

**SIXTH CLAIM FOR RELIEF**
**False Advertising – N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff and the New York Subclass)**

108. Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

109. N.Y. Gen. Bus. Law § 350 provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

110. Defendant's actions regarding the Extra Fees, as described herein, constitute false advertising in the conduct of the business trade or commerce of bus tickets.

111. Plaintiffs and the New York subclass have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 350.

112. Defendant's false advertising occurred, and continues to occur, in the course of Defendant's business.

113. As an actual and proximate result of Defendant's misconduct, Plaintiffs and the Class were injured and suffered damages.

114. As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiffs and the other members of the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class seek an Order:

1. Certifying the proposed Class pursuant to Rule 23;

2. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3. Declaring the Defendant has committed the violations of law alleged herein;

4. Providing for any and all injunctive relief the Court deems appropriate;

5. Awarding statutory damages in the maximum amount for which the law provides;

6. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7. Providing for any and all equitable monetary relief the Court deems appropriate;

8. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9. Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

10. Awarding pre- and post-judgment interest to the extent the law allows; and

11. Providing such further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: December 4, 2024

Respectfully submitted,

*/s/ Joseph H. Kanee*

Joseph H. Kanee*
EDELSBGER LAW, P.A.
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Tel: 786-933-2775
joseph@edelsberglaw.com

Jonathan M. Hixon, BBO # 692420
Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
Tel: (617) 422-0200
jmh@bostonbusinesslaw.com

Jeffrey D. Kaliel*
Sophia Goren Gold*
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielgold.com*

*Counsel for Plaintiffs and the Proposed Classes*
**admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

*/s/ Joseph H. Kanee*
Joseph H. Kanee. Esq.