UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DINESH MULANI, and WESLEY BATSON, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>PETER PAN BUS LINES, INC.,<br><br>  Defendant. | Civil Action No. 24-12277-MGM |

<u>MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND PLAINTIFFS' MOTION FOR LEAVE TO FILE
A SECOND AMENDED COMPLAINT</u>
(Dkt. Nos. 29 & 32)

September 23, 2025

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

This is a proposed class action alleging Peter Pan Bus Lines, Inc. ("Defendant") unlawfully subjects customers to the payment of junk fees. Plaintiffs, on behalf of themselves, a proposed national class of all others similarly situated, and a proposed subclass of similarly situated New York residents, initiated this action, alleging Defendant's conduct constitutes unjust enrichment (Count I), is in breach of a contract (Count II), breaches the implied covenant of good faith and fair dealing (Count III), violates Mass. Gen. Law ch. 93A (Count IV), and violates New York Gen. Bus. Law §§ 349 and 350 (Counts V & VI).

After the close of pleadings, Defendant moved under Fed. R. Civ. P. 12(c) for judgment on the pleadings. In support of this motion, Defendant first argues Plaintiff Mulani lacks Article III

standing because he did not purchase a ticket through Defendant's website.[1] Defendant next contends the operative complaint fails to plausibly allege there was a contract Defendant breached, thereby justifying dismissal of the contract, implied covenant, and unjust enrichment claims. As to the statutory consumer protection claims, asserted under both Massachusetts and New York laws, Defendant argues the two states' laws are in conflict, requiring the court engage in a formal choice of law analysis. The result of this analysis, Defendant says, should lead to application of New York consumer protection law and the dismissal of the Massachusetts Chapter 93A claim. Finally, Defendant posits the remaining New York consumer protection claims are insufficiently pled and therefore should be dismissed on their merits.

For the following reasons, Defendant's motion for judgment on the pleadings is granted. Plaintiff's motion for leave to amend is denied.

## II.   BACKGROUND[2]

Operating from its headquarters in Springfield, Massachusetts, Defendant provides bus services between many major metropolitan areas throughout the northeast United States. To facilitate ticket sales, Defendant operates an interactive website that includes a search feature. This allows potential customers to look at route information, timetables, and ticket prices. It is this last element—pricing information—that Plaintiff challenges. Specifically, the complaint alleges Defendant's website

---

[1] Plaintiffs now admit this is true. (Dkt. No. ¶ 11.) Mulani is therefore dismissed, and the court will refer to Wesley Batson as "Plaintiff." In similar circumstances, another district court issued an order to show cause for violations of Fed. R. Civ. P. 11. *See Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA), 2023 WL 5935694, at *6 (S.D.N.Y. Sept. 12, 2023). Here, the court will exercise its discretion not to take this approach at this time.

[2] Unless otherwise noted, all factual allegations are drawn from Plaintiff's operative complaint. (Dkt. No. 23.)

lists one price before a prospective customer hits the "book now" button, then adds several extra fees that only become visible immediately before the customer checks out. These fees include "fuel surcharges," "transaction fees," and "departure fees." According to Plaintiff, these added fees are an example of "drip pricing," as they are additional fees tacked on to a low advertised base price and disclosed later in the checkout process.

On February 9, 2024, Plaintiff went to Defendant's website with the intention of buying two tickets to take him from New York City to Philadelphia. His first search of the website told him each ticket would cost $11.00, for a total price of $22.00. Plaintiff proceeded with checkout and, immediately before paying, he noticed he was also being charged $14.00 in "transaction fees." Had he known of these extra fees before checkout, Plaintiff indicates he would have taken his business elsewhere.

### III. LEGAL STANDARDS

#### A. Rule 12(c)

As this matter is before the court on Defendant's motion for judgment on the pleadings pursuant to Rule 12(c), the court applies the standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 44-45 (1st Cir. 2012). Therefore, the pleadings must demonstrate "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The court must credit well-pleaded factual allegations as true and draw all reasonable inferences from those facts in the non-moving party's favor. *See Evergreen*

3

*Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). "Well-pleaded facts must be non-conclusory and non-speculative." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (citing *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). For a claim to proceed, the pleadings must contain enough facts to plausibly establish each material element of the claim and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure Section 1216, pp. 235-36 (3d ed. 2004)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc) (citing *Twombly*, 550 U.S. at 555). The court's review is typically limited to the allegations in the pleadings, but it "may [also] consider implications from documents attached to or fairly incorporated into the complaint," *Barchock*, 886 F.3d at 48 (quoting *Schatz*, 669 F. 3d at 55) as well as "matters of public record, and other matters susceptible to judicial notice." *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) (quoting *In re Colonial Mortgage Bankers Corp.*, 324 F. 3d 12, 20 (1st Cir. 2003)).

### B. Motion to Amend

Generally, under Fed. R. Civ. P. 15(a)(2), "[a] party may amend its pleading only with the opposing party's written consent or the court's leave," but "[t]he court should freely give leave when justice so requires." Despite this broad language, "[t]his rule does not mean that a trial court must mindlessly grant every request for leave to amend." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 60 (1st Cir. 2013) (alteration added and internal quotation marks omitted). Rather, leave to amend is appropriately denied when "the request is characterized by undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part." *Id.* at 61 (alteration in original and internal quotation marks omitted).

In addition, "[w]hen a litigant seeks leave to amend after the expiration of a deadline set in a scheduling order, Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard." *Baez v. Baymark Detoxification Servs., Inc.*, 123 F.4th 62, 67 (1st Cir. 2024) (quoting *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192 (1st Cir. 2015)). "The good cause standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Flores-Silva v. McClintock-Hernandez*, 710 F.3d 1, 3 (1st Cir. 2013) (citing *Steir v. Girl Scouts of the USA*, 383 F. 3d 7, 12 (1st Cir. 2004)). "[I]ndifference by the moving party seal[s] off this avenue of relief irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) (alterations in original, internal quotation marks omitted).

### IV.  CHOICE OF LAW

"A federal district court exercising its diversity jurisdiction must apply the choice-of-law rules of the state in which it sits." *Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). However, "[t]he first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions." *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004) (citing *Millipore Corp. v. Travelers Indem. Co.*, 115 F. 3d 21, 29 (1st Cir. 1997)). When the result is the same under the substantive law of any interested jurisdiction, the court "need not resolve the issue." *Lambert v. Kysar*, 983 F.2d 1110, 1114 (1st Cir. 1993). Relatedly, the court is "free to honor the reasonable understanding of the parties as to choice of law." *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) (citing *Artuso v. Vertex Pharm., Inc.*, 637 F. 3d 1, 5 (1st Cir. 2011)); *see also Motorists Com. Mut. Ins. Co. v. Hartwell,* 53 F.4th 730, 734 (1st Cir. 2022).

As to unjust enrichment (Count I), breach of contract (Count II), and breach of the implied

5

covenant of good faith and fair dealing (Count III) claims, the court will apply Massachusetts law, as there is an implicit agreement among the parties that Massachusetts law applies to these specific issues. Plaintiff has demonstrated this agreement by citing Massachusetts law in relation to these claims in both the operative complaint and briefing. Defendant, while citing both Massachusetts and New York law when discussing these claims, also notes the laws are not in conflict on these issues. Based on its independent analysis, the court is similarly satisfied there is no conflict on these counts. *Compare Gibson Found., Inc. v. Norris,* 88 F.4th 1 (1st Cir. 2023) (setting forth elements of a breach of contract claim under Massachusetts law); *A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transportation Auth.*, 95 N.E.3d 547, 560 (Mass. 2018) (implied covenant); *Columbia Plaza Assocs. v. Ne. Univ.*, 227 N.E.3d 999, 1018 (Mass. 2024) (unjust enrichment); *with 34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (contract); *ABN AMRO Bank, N.V. v. MBIA Inc.*, 952 N.E.2d 463, 475 (N.Y. 2011) (implied covenant); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (unjust enrichment). Therefore, the court will apply the law of the forum state. *See UBS Fin. Servs., Inc. v. Aliberti,* 133 N.E.3d 277, 288 n. 12 (Mass. 2019).

However, as to the consumer protection claims, the court agrees with Defendant's argument that there is a true conflict between the laws of Massachusetts and New York. In *Aronstein v. Massachusetts Mut. Life Ins. Co.*, this court found a conflict between Massachusetts Chapter 93A and New York Gen. Bus. Law § 349. *Aronstein v. Massachusetts Mut. Life Ins. Co.*, No. 15-12864-MGM, 2016 WL 1626835 (D. Mass. Apr. 22, 2016) at *5. Chapter 93A, for example, allows for treble damages without an upper limit, while Gen. Bus. Law § 349 caps treble damage awards at $1,000. *Compare* Mass. Gen. Law. ch. 93A, § 9(3A) *with* N.Y. Gen. Bus. Law § 349(h).

Another difference between New York and Massachusetts laws can be seen with liability. Under Section 349, a person or entity may be liable if they make a "representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances." *Gaidon v. Guardian Life*

6

*Ins. Co. of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999) (citing *Karlin v. IVF Am.*, 93 N.Y.2d 282 (1999)). This requirement "cannot fairly be understood to mean that everyone who acts unlawfully. . . is being 'deceptive.' . . . [as this] interpretation would stretch the statute beyond its natural bounds to cover virtually all misconduct by businesses that deal with consumers." *Schlessinger v. Valspar Corp.*, 991 N.E.2d 190, 193 (N.Y. 2013) (alterations added).

By contrast, Chapter 93A applies not only to conduct that tends to mislead consumers, it also prohibits conduct that "is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to [consumers,] competitors or other business people." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 79 (1st Cir. 2020) (alteration in original) (quoting *Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc.*, 532 N.E.2d 660, 664 (Mass. 1989)). Given these differences in the scope of liability and damages under the two provisions, the court once again concludes there is a true conflict between Chapter 93A and Section 349.

Having identified "at least one potentially relevant difference among the state laws," the court will apply Massachusetts choice of law rules to determine which consumer protection law to apply. *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 399 (D. Mass. 2017) (citing Klaxon Co., 313 U.S. 487 at 496); *see also Ortiz v. Saba Univ. Sch. of Med.*, 348 F.R.D. 4, 13 (D. Mass. 2024). Massachusetts relies on a "a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Viscito,* 34 F.4th at 83 (quoting *UBS Fin. Servs., Inc,* 133 N.E.3d at 288 n.12. "Under the functional approach, the forum applies the substantive law of the state which has the more significant relationship to the transaction in litigation." *Id.* (internal quotation marks omitted). The functional approach is "explicitly guided by the Restatement (Second) of Conflict of Laws (1971)." *Aliberti*, 133 N.E.3d at 288 n. 12.

The court looks to the relevant portion of the Restatement governing consumer fraud

7

claims—Section 148(2). *Ortiz*, 348 F.R.D. at 14; *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 82-83 (D. Mass. 2005); *cf. Conway v. Planet Fitness Holdings, LLC,* 189 N.E.3d 675, 682 n. 18 (Mass. App. Ct. 2022). Section 148(2) sets forth the following six factors to help determine which state has "the most significant relationship to the occurrence and the parties":

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of the Laws § 148(2)(a)-(f); *see also Ortiz,* 348 F.R.D. at 14 (relying on the Section 148 factors); *Feingold v. John Hancock Life Ins. Co. (USA)*, No. CIV.A. 13-10185-JLT, 2013 WL 4495126, at *3 (D. Mass. Aug. 19, 2013) (same), *aff'd,* 753 F.3d 55 (1st Cir. 2014). "If any two of the above-mentioned contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." Restatement (Second) of Conflict of the Laws § 148, cmt. j; *see also id.* cmt. g (noting "the place where the plaintiff acted in reliance on the defendant's representations" is a more important contact than where the representation was made or received).

Here, Defendant is headquartered in Massachusetts. Defendant also arguably made the alleged misrepresentations in Massachusetts, although the court accords this factor relatively little weight in the context of internet advertising. The remaining factors, moreover, counsel against applying Massachusetts law, as Plaintiff acted in reliance upon Defendant's alleged representation in New York; Plaintiff received the representation in New York; the bus ride was to leave from New York; and Plaintiff was presumably paying Defendant in New York. Accordingly, this court joins an "unbroken string of opinions declining to extend Chapter 93A to multi-state classes [or a Plaintiff seeking to

8

establish such as class]" as "[i]t is well established that under the Restatement, the laws of the home states of the consumers govern." *Ortiz*, 348 F.R.D. at 15 (collecting cases); *see also Aronstein*, 2016 WL 1626835, at *6 (dismissing Chapter 93A claim in favor of New York consumer fraud claim); *Feingold*, 2013 WL 4495126, at *3 (dismissing Chapter 93A claim in favor of Illinois consumer fraud claim).

In response, Plaintiff does not address the numerous cases declining to allow non-Massachusetts plaintiffs to rely on Chapter 93A after conducting a choice of law analysis. Rather, Plaintiff either suggests it is too early in the litigation process to engage in such analysis, or cites a handful of cases that, he argues, generally support allowing a New Yorker to bring a Chapter 93A claim. As to the first argument, "[i]n many cases, the relevant facts are sufficiently clear that delay in making a choice-of-law determination would serve no useful purpose." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 42 (1st Cir. 2020) (alteration added). Here, there are no "important holes in the record" relative to the choice of law issue, as the complaint squarely alleges Plaintiff is from New York, bought the ticket in New York, and planned to take the trip from New York to a third state (not Massachusetts). *Id.* The court therefore concludes it is "free to make a choice-of-law determination on the basis of the plaintiff's complaint," as there are no additional factual complexities which, in the right circumstance, could make it impossible to engage in choice of law analysis at the motion to dismiss stage. *Id.*

Turning to Plaintiff's reliance on *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 339 (D. Mass. 2015, *Geis v. Nestle Waters N. Am., Inc.*, 321 F. Supp. 3d 230 (D. Mass. 2018), and *Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1 (D. Mass. 2022), the court is not persuaded these decisions support his argument. None of these cases directly addressed choice of law analysis; rather, they concerned the threshold question of whether a plaintiff from outside Massachusetts could *ever* invoke Chapter 93A. *Bezdek*, 79 F. Supp. 3d at 341 (analyzing a proposed settlement class); *Geis*, 321 F. Supp. 3d at 240-42 (analyzing Article III standing); *Cristostomo*, 647 F. Supp. 3d at 14 (analyzing a motion to

strike); *see also Ortiz*, 348 F.R.D. at 15 (distinguishing *Bezdek*). As this court has often noted, "[a]lthough Section 9 of the Massachusetts Consumer Protection Act has no textual constraints on its application, Massachusetts choice-of-law principles are not so unlimited." *Ortiz*, 348 F.R.D. at 13 (quoting *Carney v. Force Factor, LLC*, No. 14-14717-RWZ, 2016 WL 10998440, at *3 (D. Mass. May 16, 2016)). Choice of law analysis is concerned with whether *this Plaintiff* may rely on Chapter 93A in the circumstances of *this case*, not whether a hypothetical plaintiff may ever do so. Depending on the balancing of the Restatement 148(2) factors, it is certainly possible Massachusetts law could have a more substantial connection to the claim of an out of state plaintiff in the right case. In this case, however, it is clear from the face of the complaint that New York law is applicable.

Accordingly, Count IV is dismissed on choice of law grounds.

## V.  DISCUSSION

### A.  Remaining Substantive Claims

*1.  Counts I, II, & III (Unjust Enrichment, Breach of Contract, and Implied Covenant)*

Under Massachusetts law, a plaintiff bringing a breach of contract claim must allege "that [1] there was a valid contract, [2] that the defendant breached its duties under the contractual agreement, [3] and that the breach caused the plaintiff damage." *Gibson Found., Inc. v. Norris*, 88 F.4th 1, 11-12 (1st Cir. 2023) (internal quotation marks omitted and alterations added). A valid contract requires an offer, acceptance, and consideration; consideration means a "a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 89 (1st Cir. 2018) (quoting *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F. 3d 197, 201 (1st Cir. 2004). To allege a material breach, the complaint must plausibly demonstrate "the breach concerns an essential and inducing feature of the contract," meaning a provision "that [is] so serious and so intimately connected with the substance of the contract[ ] that a failure to uphold the provision would

10

justify the other party walking away from the contract and no longer being bound by it." *G4S Tech. LLC v. Massachusetts Tech. Park Corp.*, 99 N.E.3d 728, 739 (Mass. 2018) (first alteration added, second alteration in original) (citing *Buchholz v. Green Bros. Co.*, 272 Mass. 49, 52 (1930).

Here, even drawing all inferences in favor of Plaintiff, this complaint is insufficient to plead a breach of contract claim. According to Plaintiff's opposition brief, "Defendant offered its bus services at the specific price advertised, which Plaintiffs accepted by completing their transactions and paying valuable consideration, adopting Defendant's website terms and representations." (Dkt. No. 35 at 11.) This framing of the allegations is not, however, what is alleged in the complaint. Rather, the complaint clearly indicates Plaintiff went to Defendant's website, saw an initial price, clicked through to check out, saw additional fees, and then proceeded to pay valuable consideration for the bus ticket after learning of the additional fees. In other words, the contract formed expressly included the fees whose inclusion Plaintiff now claims constituted a breach.

There is no plausible allegation Plaintiff failed to get what he bargained for—a bus trip to Philadelphia for the price he paid—meaning the complaint fails to allege either breach or damages. *See Shaulis,* 865 F.3d at 15-16(dismissing an analogous claim where consumer received the benefit of the bargain). Plaintiff could have walked away from the transaction after learning of the fees but before paying. *See Guldseth v. Fam. Med. Assocs. LLC,* 45 F.4th 526, 539 (1st Cir. 2022) ("[A]s we've cautioned before, a knowledgeable buyer should not [agree to] a contract that conflicts with his or her understanding of the agreement." (internal quotation marks omitted and alterations added)); *see also Harris v. LAZ Parking Ltd., LLC,* No. 3:24-CV-889 (SVN), 2025 WL 473654, at *5-7 (D. Conn. Feb. 12, 2025) (dismissing similar theory of contractual liability). Count II is therefore dismissed for failure to state a claim.[3]

---

[3] Plaintiff's opposition brief cites two cases as supporting the viability of a breach by overcharge claim under Massachusetts law. *See Com. Union Ins. Co. v. Bos. Edison Co.,* 591 N.E.2d 165 (Mass. 1992);

11

Similarly, Plaintiff fails to allege a plausible violation of the implied covenant of good faith and fair dealing, as the complaint does not identify any conduct violating the spirit of the parties' agreement. To the extent Plaintiff claims Defendant violated "its duty to refrain from withholding material information and making misleading representations to consumers," this allegation is contradicted by the rest of the complaint. Plaintiff was clearly informed of the fees before he paid, meaning this allegation amounts to a gripe about when he should have been informed. To the extent Plaintiff claims Defendant's use of "unfair leverage to secure undue economic advantage" violated the implied covenant, Plaintiff could have selected a different bus company if he disliked the rate he was offered. There is no allegation Defendant forced him to pay the fees (or to use its bus service) through either explicit or implicit coercion: rather, it is apparent from the complaint he paid the bus fees willingly. Accordingly, Count III is dismissed.

Finally, Plaintiff's unjust enrichment claim is foreclosed because, "[a] party with an adequate remedy at law cannot claim unjust enrichment." *Shaulis*, 865 F.3d at 16 (citing *ARE-Tech Square, LLC v. Galenea Corp., 91 Mass. App. Ct.* 1106, 2017 WL 634771 (Mass. App. Ct. 2017)). "It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Id.* Accordingly, Count I is dismissed.

2. *Counts V&VI (Violation of N.Y. Gen. Bus. Law §§ 349 & 350)*

To state a claim under either N.Y. Gen. Bus. Law § 349 or § 350, a plaintiff must plausibly

---

*Ameripride Linen & Apparel Servs., Inc. v. Eat Well, Inc.*, 836 N.E.2d 1116 (Mass. App. Ct. 2005). The court agrees such a claim is allowed under Massachusetts law, but these cases illustrate why Plaintiff's specific claim fails as a matter of law. In both cases, the alleged overcharge was incurred *after* the parties began performing on the contract and incurred charges under the agreements. *Com. Union Ins. Co.*, 591 N.E.2d at 167; *Ameripride Linen & Apparel Servs., Inc.*, 836 N.E.2d at 1119-20. For these cases to be analogous, Plaintiff would have had to allege that he paid Defendant $22.00 for the round-trip bus ticket and that when the Plaintiff checked his bank statement, Plaintiff would have realized Defendant took additional money on top of the $22.00 that the Plaintiff had been initially charged for the bus ticket. It is inherently implausible to claim you have been overcharged before you have been charged.

12

allege: (1) an act or practice that was consumer oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured by the act or practice. *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (noting the elements are the same under either section). In his motion, Defendant challenges the sufficiency of the injury element.[4]

According to Plaintiff's opposition brief, the complaint sufficiently pleads a "price premium" theory of injury. A price premium theory of injury means, "Plaintiff paid more than they would have for the good but for the deceptive practices of the defendant-sellers." *Orlander*, 802 F.3d at 302 (alteration added). "Typically, a plaintiff makes this allegation by asserting that a particular product was marketed as having a special quality, that the marketing enabled the company to charge a premium for the product, and that the plaintiff paid this premium and later discovered that the product did not, in fact, have the marketed quality." *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 301 (S.D.N.Y. 2023)(citing *Duran v. Henkel of Am., Inc.,* 450 F. Supp. 3d. 337, 350 (S.D.N.Y.)). There must be a "connection between the misrepresentation and any harm from, or failure of, the product" to establish this theory of injury. *Duran,* 450 F. Supp. 3d at 350 (citing *DaCorta v. AM Retail Grp.*, No. 16 Civ. 1748 (NSR), 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018)).

The complaint does not, however, contain any factual allegations supporting a price premium theory of injury. There are, for example, no factual allegations that Defendant's bus tickets were marketed as having a special quality. Because this allegation is lacking, Plaintiff cannot allege he paid a premium because of a special attribute, only to later discover the ticket lacked the special quality. Rather, it is apparent from the allegations that the complaint's only asserted "injury" is a generalized

---

[4] Defendant also argued the operative complaint failed to allege Plaintiff's transaction with Defendant occurred in New York, or that Plaintiff was deceived in New York. The court does not find it necessary to address this argument.

disagreement with when Defendant's website notifies consumers about the fees. This generalized, nonpecuniary grievance is not sufficient to establish injury under New York's consumer protection laws. *See Small v. Lorillard Tobacco Co.,* 720 N.E.2d 892, 898 (N.Y. 1999) ("Plaintiffs' definition of injury is legally flawed. Their theory contains no manifestation of either pecuniary or 'actual' harm; plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a result of their ensuing addiction."); *McCabe v. CVS Health Corp.*, No. 22CV3116RPKRML, 2023 WL 6385729, at *6 (E.D.N.Y. Sept. 29, 2023) (rejecting similar theory of injury); *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452-53 (E.D.N.Y. 2012) (explaining the price premium theory is only appropriate when the complaint alleges a specific misrepresentation caused the plaintiff to pay a higher price), *aff'd*, 531 F. App'x 110 (2d Cir. 2013); *Sokoloff v. Town Sports Int'l Inc.*, 6 A.D.3d 185, 186, 778 N.Y.S.2d 9 (1st Dep't 2004). Accordingly, Counts V and VI are dismissed.

### B.     Motion to Amend

On December 19, 2024, the court entered a scheduling order requiring that any motion to amend the pleadings be filed by February 12, 2025. In response to Defendant's motion for judgment on the pleadings, Plaintiff moved for leave to amend on February 24, 2025. Because this motion was filed in violation of the scheduling order's requirements, the "good cause" standard of Rule 16(b) applies.

After careful review, the court finds Plaintiff has not established good cause for amendment. All the additional information that Plaintiff seeks to add to the complaint could (and should) have been included in either the initial complaint or the first amended complaint.[5] For example, based on

---

[5] Plaintiff filed a first amended complaint on December 23, 2025. (Dkt. No. 23.)

14

Rule 11, which requires a pre-suit investigation, Mulani never should have been included as a Plaintiff in this case due to his failure to buy a ticket from Defendant's website. Similarly, during the pre-suit investigation, the Plaintiff should have identified the various allegations that bolster his consumer protection claims, and he could have included those claims with the initial or first amended complaint. Moreover, defendants routinely attack consumer protection actions for failing to meet the jurisdictional elements of state statutes. Therefore, Plaintiff should not have been surprised that, at minimum, the complaint in this case would need to establish the jurisdictional applicability of the cited consumer protection laws. Finally, the court is unpersuaded by Plaintiff's assertions that Defendant engaged in prejudicial conduct by waiting until the pleadings closed to file a motion under Rule 12(c), as filing such a motion is their right under the Federal Rules.[6] *See ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) ("The plaintiffs do not get leisurely repeated bites at the apple, forcing a district judge to decide whether each successive complaint was adequate . . ."); *Aponte-Torres v. Univ. Of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006) ("Having afforded the plaintiffs an ample opportunity to put their best foot forward, the district court was not obliged to grant them yet another opportunity to state a claim."); *Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at *19 (D. Mass. Feb. 2, 2021) ("It is not the obligation of the courts to guide litigants through endless rounds of pleading.") (quoting *Aponte-Torres*, 445 F. 3d at 58).

Accordingly, the motion to amend is denied.

---

[6] In ruling on the motion for judgment on the pleadings, the court did not consider arguments raised by Defendant that were cured by the proposed amended complaint. Further, when considering the remaining arguments, the court looked to the proposed amended complaint and found the new allegations would not change the court's analysis. This renders the proposed amendment futile in addition to being untimely.

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings is GRANTED. (Dkt. No. 29.) Plaintiff's motion to amend is DENIED.  This case may now be closed.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge